KWOCK JAN FAT et al. v. WHITE, Commissioner of Immigration.*

(Circuit Court of Appeals, Ninth Circuit. January 6, 1919.)

No. 3146.

ALIENS ☞32(9)—EXCLUSION OF CHINESE—FAIRNESS OF HEARING.

   That an immigration commissioner at the time of rejecting a Chinese applicant for admission had in his possession a report of an inspector containing material statements made to him by an undisclosed witness, which report was not shown to applicant or his attorney, *held* not sufficient to invalidate the finding, where it appears that the commissioner did not consider the report.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Benjamin F. Bledsoe, Judge.

Habeas corpus by Kwock Jan Fat and Tom Ying Shee against Edward White, Commissioner of Immigration for the Port of San Francisco. Writ denied, and petitioners appeal. Affirmed.

Dion R. Holm, of San Francisco, Cal., for appellants.

Annette Abbott Adams, U. S. Atty., and C. F. Tramutolo, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. On June 20, 1915, the appellant Kwock Jan Fat, on application to the commissioner of immigration for the Port of San Francisco, secured a preinvestigation of his status as an American citizen; he being about to depart for China. He claimed to be a son of Tuck Lee, who was born at Monterey, Cal. On June 7, 1917, he returned to the United States at the Port of San Francisco, and upon testimony taken and a hearing had he was denied admission on the ground that he was not the son of Tuck Lee, and was not an American citizen, but that his true name was Leu Suey Chong. On appeal to the Secretary of Labor the decision was affirmed. Application was made to the court below for a writ of habeas corpus, the petition alleging that the hearing before the commissioner was unfair, in that in the record of the testimony taken no mention was made of the fact that three white witnesses for the applicant, Michaelis, Pugh, and Ortings, when confronted by the applicant recognized him, and were recognized by him, and in the further fact that in the report of Wilkinson, immigrant inspector, to the commissioner, the inspector stated that he had interviewed a person who desired that his identity be not disclosed, but who had given important information against the applicant concerning the issue whether or not the latter was the son of Tuck Lee. The court below denied the writ, and the questions so presented are brought to this court by appeal.

The fact that, when the applicant was confronted by three of the witnesses who were brought from Monterey to testify that he was the son of Tuck Lee, there was mutual recognition, was an important circumstance and should properly have been noted in the record of

the testimony. It appears, however, that, when the attention of the commissioner was directed to that omission, he wrote to the applicant's counsel stating that the witnesses when confronted with the appellant immediately recognized and identified him as the person whom they knew as Kwock Jan Fat, and that the appellant was equally prompt in his recognition of said witnesses, and adding:

"While I was advised of this incident and gave it full consideration in arriving at my decision, it was not made of record in connection with the statements taken from the witnesses. Copy of this letter will be placed with the record, however, and the fact that there was mutual recognition between said witnesses and the applicant will thus be available for the consideration of the secretary upon appeal."

The record shows that this letter was brought to the attention of the secretary on the appeal. This was clearly sufficient to give the applicant the advantage of the facts.

A more serious question is raised by the allegation that evidence was considered by the appellee which counsel for the appellant was not permitted to see. Wilkinson, immigration inspector, was sent to Monterey to investigate the case. He interviewed a person who gave evidence only with the understanding that his name was to be kept secret. The inspector's report states:

"This witness was intimately associated with the inhabitants of Chinatown of Pacific Grove, especially during the year 1902, and had occasion to visit the home of the applicant's alleged mother almost nightly during that year, under which circumstances said witness was in a position to have absolute knowledge as to the number and identity of the members of that family. While the witness was well acquainted with the applicant's three alleged sisters and knew their names and present whereabouts, it was stated most positively by the witness that there were no boys born to Tong Shee (applicant's alleged mother). Said witness was unable to identify the photographs of either Leu Suey Chong (the boy who was admitted at this port as the son of a merchant in 1909) or the photograph of the applicant (as it appears on his return certificate or in the group photographs of the Oakland class) as any one whom the witness had ever seen. As the applicant would have been about six years of age during the year of this witness' activity (1902), the above failure to recognize his photograph is very significant. After my first interview— on the afternoon of the 4th inst.—this witness inquired of an old Chinese resident of Pacific Grove and Monterey concerning the sons of Tuck Lee (applicant's alleged father), whereupon said Chinese stated that Tuck Lee had no sons and that the witness should have nothing to do with the case and should sign no affidavits in their behalf; that such action would involve the witness in trouble. * * * The above-mentioned witness was thoroughly conversant with the history of this family, and advised me concerning the daughter Quock Ah Oy, whose whereabouts is now unknown."

Counsel for the applicant demanded the right to see the affidavit of this undisclosed witness and was informed that no affidavit or record of the testimony of such witness was secured, that there was no evidence considered by the appellee in arriving at his decision in the case "which you have not been permitted to inspect," and that that portion of the inspector's report which was withheld contained nothing which was material to the issue. "As a matter of fact," wrote the appellee, "this inspector's report in no way influenced my decision." It is not true that the inspector's report contained nothing which was material to the issue. On the contrary, it was directly in point. In

Chew Hong Quong v. White, 249 Fed. 869, —— C. C. A. ——, we held that where the immigration authorities received and acted upon a confidential communication, the source and contents of which they did not disclose to the applicant or his attorneys so as to allow any rebuttal, and which communication was forwarded to the Department of Labor for its consideration, the hearing was unfair. But this is not such a case. Here it appears that the communication was not considered or relied upon. It should not be held that the mere receipt of an anonymous communication, which is not made the basis of the commissioner's decision and does not influence it, renders the hearing unfair.

The judgment is affirmed.